# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs June 24, 2008

## STATE OF TENNESSEE v. DONALD BLEVINS

### Appeal from the Criminal Court for Sullivan County
### No. S51,714    R. Jerry Beck, Judge

### No. E2007-01588-CCA-R3-CD - Filed August 26, 2008

The defendant, Donald Blevins, pleaded guilty in the Sullivan County Criminal Court to a single count of reckless homicide in exchange for a two-year sentence with the manner of service of the sentence to be determined by the trial court. The trial court denied all forms of alternative sentencing, and the defendant now appeals. We reverse the judgment of the trial court.

### Tenn. R. App. P. 3; Judgment of the Criminal Court Reversed

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

Michael LaGuardia (at trial), and C. Brad Sproles (on appeal), Kingsport, Tennessee, for the appellant, Donald Blevins.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; H. Greeley Wells, Jr., District Attorney General; and Julie Canter, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On February 8, 2007, the defendant entered a plea of guilty to the single, charged offense of reckless homicide based upon the death of the victim, Jonathan Light.[1] The plea agreement called for a two-year sentence with the manner of service to be determined by the trial court.

At the sentencing hearing, the trial court and counsel for the parties recalled the facts of the case during the following colloquy:

---

[1]The transcript of the plea submission hearing is not included in the appellate record. Nevertheless, we have gleaned these minimal facts from the remainder of the record. We also note that the judgment forms provide that the defendant entered his guilty plea under the terms of *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160 (1970), wherein the United States Supreme Court held that a criminal defendant may enter a guilty plea without admitting guilt if the defendant intelligently concludes that his best interests would be served by a plea of guilty.

The Court:            All right. When I first said this was an unusual case, it involves where the Defendant allegedly had some patches and what is described in the probation report as a Duragesic patch . . . .

What was the generic or name of the drug? It came out during the stipulation at the time of the plea.

General Canter:      Judge, I believe it was fentanyl.

Mr. LaGuardia:      I think that's correct, Your Honor.

The Court:            Doesn't describe in the indictment. It was . . . a prescription type thing. You put it on your skin. And the Defendant ate it or something. I mean the victim.

        . . . .

The Court:            Okay. Morphine patch in exchange for selling other patches for [the defendant] at Model City Apartments. And also gave some todipols and some soma.

Then the medical came out from the medical examiner that it could have caused the death. Most likely did. And you compromised it by this plea agreement.

Mr. LaGuardia:      That's correct, Your Honor.

General Canter:      Judge, Mr. Light, the victim, was 33 years old at the time of his death.

The Court:            Okay. It says here in the report . . . the way that the doctors approached it, . . . the deceased probably took more than one kind of drug. And it was a death caused from multiple substances. They said that the lethal . . . dosage of fentanyl . . . .provided in this report as a general guideline, although it . . . cannot be said . . . what would have occurred if it had been used alone.

But Dr. Ferslew, who is the expert from over at East Tennessee State, . . . explained that each individual's body is different. . . . Dr. Ferslew said that Mr. Light was evidently a heavy user . . . and therefore probably had extremely high tolerance to them.

Therefore it's impossible to say if the fentanyl . . . in itself would have been lethal. Both doctors concluded and reiterated that this death resulted from the consumption of multiple substances, all of which might not be attributed to the Defendant. Is that correct, General?

General Canter:    Judge, it's clear that the Defendant supplied the fentanyl which . . . the doctors indicated that [the victim's] blood contained almost 50 times the lethal dosage. And that drug was supplied by the Defendant. [The victim's] system also contained benzodiazepines and alcohol.

The defendant testified that after being exposed to "toxic chemicals" while working construction on "a nuclear waste dump" in Oak Ridge, Tennessee, he experienced numerous health problems that eventually led to his being prescribed the Duragesic patch that he later transferred to the victim. According to the defendant, he first met the victim when the victim approached him with an offer to sell him tools that, as the defendant later discovered, the victim had stolen from a neighbor. During this encounter, the victim asked the defendant about the patch on his arm, and the defendant explained that it was for pain. The victim then inquired about purchasing some of the defendant's pain medication.

The defendant stated that should he be incarcerated, his insurance coverage would terminate and that his monthly prescription drug expenses would increase from approximately $5 per month to $532 per month and would consume a sizeable portion of his $1100 per month income. The defendant testified that he was unable to work because of his health problems but that he sometimes helped his landlord, Duane Murray, with remodeling jobs. The defendant stated that because of his exposure to toxic chemicals, he struggled with memory and cognitive function. The defendant admitted that he sold "one or two" fentanyl patches to obtain money to purchase gasoline and tobacco.

Duane Murray, the defendant's landlord and friend, testified that the victim had recently moved in "with the woman [he] rented to." Mr. Murray testified that prior to his exposure in Oak Ridge, the defendant was "hard-working" and "wouldn't stop or try to slack" when on the job. After his exposure, the defendant was unable to keep the same work hours or perform the same types of work that he had before. Mr. Murray stated that the defendant had problems with his cognitive function as evidenced by his inability to comprehend and recall simple instructions. Mr. Murray testified that the defendant had only known the victim for "a day or two before the incident occurred."

At the conclusion of the hearing, the trial court "denied probation in all forms of alternative release" on the sole basis of the victim's mother's statement, contained within the presentence report, that "the Defendant aggravated [the victim] for weeks to sell these patches for him." The court reiterated that the victim's mother's statement was "the difference in probation and not probation." The defendant objected to the trial court's considering the statement for those purposes on the basis that it was unreliable hearsay and was, in fact, controverted by the testimony of both the defendant and Mr. Murray. The trial court responded to the objection by stating that it had made its ruling and invited the defendant to challenge the ruling on appeal.

In this appeal, the defendant challenges the trial court's consideration of the victim's mother's statement, which he believes constitutes unreliable hearsay. Further, he contends that the trial court erred by denying probation or other alternative sentencing. The State argues that the

defendant has forfeited his right to challenge the admissibility of the statement by failing to lodge a contemporaneous objection. In the alternative, it asserts that the trial court properly considered the statement and that the order of total incarceration was appropriate. For reasons discussed more fully below, we hold that the trial court erred by denying a sentence of full probation.

Considering first the State's claim that the defendant forfeited appellate consideration of this issue, the record establishes that the defendant apparently made no objections to the contents of the presentence report prior to the sentencing hearing and did not object when the State tendered the report into evidence. Once the trial court indicated that it would consider the statement as substantive evidence of the circumstances of the offense, the defendant objected on the grounds that the statement was unreliable hearsay. The trial court overruled the objection without concluding that the statement was reliable. Under these circumstances, we decline to treat the issue as waived and hold that it is justiciable on appeal.

We now examine the content and context of the statement at issue. The record establishes that the victim's mother, in an interview with the preparer of the presentence report, objected to the imposition of probation or other alternative sentencing on the basis that "the defendant aggravated her son for weeks to sell these patches for him." The statement offers no context by which the term "weeks" could be comprehended as any determinable period of time. Similarly, there is no context from which to ascertain exactly what was meant by the term "aggravated." Nevertheless, during the sentencing hearing, the trial court, although initially expressing concern that it could not consider the statement because it did not fall within the ambit of "victim impact evidence," considered the statement as substantive evidence of the circumstances of the offense. From this statement, the trial court concluded that "the [d]efendant wasn't only selling that day, but based upon the mother's statement . . . he was doing this before." The trial court, without any examination of the factors related to imposing a fully incarcerative sentence, based its denial of any form of alternative sentencing entirely on the victim's mother's statement: "And that's what tips the scale is that one word there, . . . make a clear record on it. . . . So that's the difference in probation and not probation. I'll draw your issue clear for you."

When a defendant challenges the manner of service of a sentence, this court generally conducts a de novo review of the record with a presumption that the determinations made by the trial court are correct. T.C.A. § 40-35-401(d) (2003).[2] This presumption, however, is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The burden of showing that the sentence is improper is upon the defendant. *Id.* If the review reflects the trial court properly considered all relevant factors and its findings of fact are adequately supported by the record, this court must affirm the sentence, "even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). In the event the record fails to

---

[2]Because the offense in this case occurred prior to the effective date of the 2005 amendments to the Sentencing Act and the defendant did not execute a waiver of his ex post facto protections, the defendant was sentenced pursuant to the 2003 version of the Act. *See* T.C.A. § 40-35-114 (Supp. 2005), compiler's notes; *see also State v. Robert Lamont Moss, Jr.*, No. M2006-00890-CCA-R3-CD, slip op. at 5 n.1 (Tenn. Crim. App., Nashville, Dec. 4, 2007).

-4-

demonstrate the required consideration by the trial court, appellate review of the sentence is purely de novo. *Ashby*, 823 S.W.2d at 169.

In making its sentencing determination in the present case, the trial court, at the conclusion of the sentencing hearing, was obliged to determine the propriety of sentencing alternatives by considering (1) the evidence, if any, received at the guilty plea and sentencing hearings, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct involved, (5) evidence and information offered by the parties on the enhancement and mitigating factors, (6) any statements the defendant made in his behalf about sentencing, and (7) the potential for rehabilitation or treatment. T.C.A. § 40-35-210(a), (b);-103(5); *State v. Holland*, 860 S.W.2d 53, 60 (Tenn. Crim. App. 1993).

Under the 2003 version of the Sentencing Act, an "especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." T.C.A. § 40-35-102(6) (2003).[3] Further, a defendant is eligible for probation "if the sentence actually imposed upon such defendant is eight (8) years or less," and the trial court is required to consider probation as a sentencing option. *Id.* § 40-35-303(a), (b). A defendant's potential for rehabilitation or lack thereof should be examined when determining if an alternative sentence is appropriate. *Id.* § 40-35-103(5). Sentencing issues are to be determined by the facts and circumstances made known in each case. *See State v. Taylor*, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987).

The trial court's determinations of whether the defendant is entitled to an alternative sentence and whether the defendant is a suitable candidate for full probation are different inquiries with different burdens of proof. *State v. Boggs*, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). When, as is the case here, the defendant is entitled to the statutory presumption favoring alternative sentencing, the State must overcome the presumption by the showing of "evidence to the contrary." *Ashby*, 823 S.W.2d at 169; *State v. Bingham*, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995), *overruled in part on other grounds by State v. Hooper*, 29 S.W.3d 1, 9-10 (Tenn. 2000); *see* T.C.A. §§ 40-35-102(6), -103. What constitutes "evidence to the contrary" can be found in Tennessee Code Annotated section 40-35-103, which provides:

> Sentences involving confinement should be based on the following considerations:
>
> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to

---

[3] The 2005 amendment to Code section 40-35-102(6) provides that those defendants who meet certain statutory prerequisites "should be considered as a favorable candidate for alternative sentencing options in the absence of evidence to the contrary. A court shall consider, but is not bound by, this advisory sentencing guideline." T.C.A. § 40-35-102(6) (2006).

provide an effective deterrence to others likely to commit similar offenses; or

> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. §40-35-103(1).

Conversely, the defendant is required to establish his "suitability for full probation as distinguished from his favorable candidacy for alternative sentencing in general." *State v. Mounger*, 7 S.W.3d 70, 78 (Tenn. Crim. App. 1999); *see* T.C.A. § 40-35-303(b); *Bingham*, 910 S.W.2d at 455-56. A defendant seeking full probation bears the burden of showing that probation will "subserve the ends of justice and the best interest[s] of both the public and the defendant." *State v. Dykes*, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990) (quoting *Hooper v. State*, 297 S.W.2d 78, 81 (1956)), *overruled on other grounds by Hooper*, 29 S.W.3d at 9-10. Among the factors applicable to probation consideration are the circumstances of the offense; the defendant's criminal record, social history, and present condition; the deterrent effect upon the defendant; and the best interests of the defendant and the public. *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978).

Because the trial court failed to consider on the record the factors contained in Code section 40-35-103 prior to imposing a fully incarcerative sentence, our review of the sentence is de novo with no presumption of correctness.

Upon our de novo review, we decline to utilize the statement given by the victim's mother to the preparer of the presentence report. Although, as the State correctly points out, this court has generally deemed the information included within presentence reports such as the defendant's prior criminal record, employment information, and the like as reliable hearsay, this designation would not extend to the underlying hearsay contained within the victim's mother's statement. Because the record does not establish the reliability of the underlying hearsay statement, we will not consider it. *See* T.C.A. § 40-35-209(b) (2003) (allowing the use of reliable hearsay in a sentencing hearing). The remaining evidence counterweighs the denial of probation.

The record establishes that although the 45-year-old defendant had eight prior misdemeanor convictions, five were for minor traffic offenses and two were more than 20 years old. In consequence, we cannot say that confinement is necessary because of the defendant's criminal history. Further, despite the trial court's finding to the contrary, there is no proof in the record that the defendant's transfer of the transdermal patch to the victim and the accompanying sale of the remaining four patches was anything more than an isolated incident as the defendant claimed. Moreover, the evidence established that, due to his ongoing heavy drug use, the victim's death could not be directly attributed to his ingestion of the gel contained within the transdermal patch, and furthermore, the victim's willful ingestion of the gel was contrary to the foreseeable and intended use of the analgesic. Accordingly, the defendant's conduct resulting in his conviction is not so egregious as to warrant confinement based upon the circumstances of the offense. Finally, there is no evidence that the defendant had ever violated the conditions of a sentence involving release into the community.

Because none of the three factors in Code section 40-35-103 is applicable to this defendant, he retains his presumption of favorable candidacy for alternative sentencing. Further, it is our view that the defendant has established his suitability for probation.[4] The evidence established that in addition to his relatively minor criminal record, the defendant was honorably discharged in 1979 after a three-year stint in the military and had maintained steady employment until he became disabled while working in Oak Ridge, Tennessee. As a result of his disability, the defendant takes numerous medications and experiences difficulty with memory and cognitive function. The defendant testified, and Mr. Murray confirmed, that despite his disability, the defendant often accompanied Mr. Murray on remodeling jobs.

Accordingly, the judgment of the trial court denying probation is reversed. The cause is remanded to the trial court for the imposition of a probationary sentence.

_____
JAMES CURWOOD WITT, JR., JUDGE

---

[4]Because the defendant pleaded guilty to reckless homicide, he is ineligible for community corrections. *See* T.C.A. § 40-36-102(a)(1)(B) (2003).